UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRICIA LYNN MOUSER,

    Plaintiff,

v.                                                                               Hon. Robert J. Jonker

HAULMARK TRAILERS,                               Case No. 1:22-cv-249

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Tricia Lynn Mouser filed this action on March 17, 2022, against her former employer, Haulmark Trailers, for personal injury, wrongful termination because of personal injury, medical neglect, and gross negligence "needing exemplification." (ECF No. 1 at PageID.1.) Having granted Plaintiff's motion to proceed as a pauper, I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, or fails to state a claim upon which relief can be granted. Based on this review, I conclude that Plaintiff's complaint must be dismissed because it fails to state a claim upon which relief may be granted.

**I.  Background**

    Plaintiff alleges that she was injured at work due to Defendant's negligence. According to her allegations, the injury occurred on August 5, 2020, when steel walls in Defendant's weld shop located in Bristol, Indiana, fell on her, rendering her unconscious for a period of time. Although Plaintiff's head, back, neck, hips, and leg hurt, and she had other injuries, she was able to hobble to the bathroom to assess her condition. When she exited the bathroom, the General Manager told

her that she could go back to work. (*Id.* at PageID.4–5.) Later that day, a supervisor gave her an incident report to complete. Plaintiff asked him where she should go for emergency services. The supervisor said he would ask but never got back to her. Plaintiff alleges that each day over the next four workdays she asked where to go for emergency services, but Defendant never provided that information. Plaintiff eventually went to the Three Rivers Emergency Room on August 14, 2020. (*Id.* at PageID.5–6.) Plaintiff called the office at work on August 17 and 18, 2020, leaving messages both days that she was unable to work due to the injuries she sustained on August 5, 2020. Plaintiff asked for a call back on both days but never heard anything from Defendant. Defendant terminated Plaintiff on August 18 under its three-day no-call-no-show policy. Plaintiff claims that she was terminated due to her injury. (*Id.* at PageID.6–7.) Defendant rehired Plaintiff in October 2020 but eventually discharged her in February 2021. (*Id.* at PageID.7.)

Plaintiff filed a workers' compensation claim with the Indiana Workers' Compensation Commission in August 2020 and eventually retained an attorney to represent her in that action. From October 2020 through January 2022, Plaintiff was examined and treated by various medical providers, apparently both her own and providers employed or retained by Defendant's workers' compensation insurance carrier, who diagnosed multiple impairments, including cervical and lumbar spine stenosis, posterior disc bulging, and disc height loss. (*Id.* at PageID.10–20.) In February 2021, Plaintiff was given permanent work restrictions for seated work only. Plaintiff alleges that the restrictions included "lies and withholding of injuries to dismiss Plaintiff because of a personal bias, and/or to minimize financial impact to the workers compensation program." (*Id.* at PageID.12; ECF No. 1-3 at PageID.66.) Plaintiff submitted the restrictions to Defendant to determine whether it had any positions available for Plaintiff within her restrictions. Defendant's human resources representative told Plaintiff that no sit-down jobs were currently available. She

told Plaintiff that she would check with Defendant's other plants and get back with Plaintiff if a sit-down job was available, but Plaintiff never heard back from her. (ECF No. 1 at PageID.13; ECF No. 1-3 at PageID.99.)

After several months, Plaintiff became frustrated with her attorney's representation in the workers' compensation action, and their relationship deteriorated. Plaintiff's attorney withdrew in August 2021. Plaintiff applied for Social Security disability benefits in November 2021. (ECF No. 1 at PageID.18–19.) A pretrial conference in the workers' compensation action is currently scheduled for May 3, 2022.

## II. Discussion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a

3

> notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

### A. Federal Claims

Plaintiff alleges that she "was injured at work due to negligence of the defendant Haulmark," and is being deprived of her rights under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). (ECF No. 1 at PageID.2–3.)

First, Plaintiff fails to state a claim under Section 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Plaintiff does not allege that Defendant is a state actor. Indeed, it is a private company that is not subject to liability under Section 1983 for violations of the federal constitution.

Next, Plaintiff alleges that Defendant violated the ADA. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" as to employment matters such as hiring, advancement, discharge, compensation, and training. 42 U.S.C. § 12112(a). A failure to make a reasonable accommodation also constitutes disability discrimination. § 12112(b)(5)(A). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Although Plaintiff refers to the ADA in her complaint, she fails to allege any fact supporting such a claim. For example, she does not allege

that she is disabled under the ADA, which defines disability as " (A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). But even if Plaintiff had alleged a disability as defined by the ADA, she alleges no fact indicating that disability played any part in Defendant's actions. Instead, she alleges that Defendant terminated her employment "because she was injured, seeking emergency medical treatment." (ECF No. 1 at PageID.3.) Plaintiff also does not allege that she made a request for a reasonable accommodation, which Defendant denied. Although Plaintiff does allege that that she was medically restricted to sit-down work in February 2021, and she asked Defendant whether it had any sit-down jobs available, she admits that Defendant's human resources representative told her that no such jobs were available. Thus, even assuming that this was a request for a reasonable accommodation— which Plaintiff does not actually allege—the accommodation was not reasonable as Defendant had no sit-down jobs available. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (the ADA does not require an employer to create a new job or displace existing employees from their positions in order to accommodate an employee's disability).

Plaintiff also alleges that she "believes . . . that she is being retaliated against and deprived of rights under Chapter 126 of U.S. Code 42 § 12117(a)." (ECF No. 1 at PageID.3.) Section 12117(a) pertains to remedies under the ADA. To the extent Plaintiff asserts an ADA retaliation claim, which is authorized in 42 U.S.C. § 12203, that claim also fails. To establish a prima facie case of retaliation under the ADA, a plaintiff must show that she (1) engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).

Protected conduct includes opposing any act or practice made unlawful under the ADA or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under the ADA. 42 U.S.C. § 12203. While Plaintiff is not required to plead a prima facie case of retaliation in her complaint, *see Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012), she must plead more than mere labels and conclusions to support her claim. *Ashcroft*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' . . . will not do.' Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." (internal citations omitted)). Here, nothing in Plaintiff's complaint plausibly suggests that she engaged in protected conduct. For example, she does not allege that she filed a charge of discrimination with the Equal Employment Opportunity Commission and Defendant thereafter retaliated against her in some manner.[1] Moreover, the filing of a workers' compensation claim will not support a retaliation claim under the ADA. *See Reynolds v. American Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) ("Filing a workers' compensation claim is not something that is covered by the ADA, but rather by retaliation provisions under state law."). Accordingly, Plaintiff fails to state a claim under the ADA.

Finally, 29 U.S.C § 52 and 42 U.SC. § 2000e-5(g), which Plaintiff cites in her complaint, provide no basis for the injunctive relief Plaintiff requests, namely, that the Court enjoin Defendant from destroying, altering, modifying, or concealing Plaintiff's employee records which indicate that an incident report was filed concerning the August 5, 2020 incident. (ECF No. 1 at PageID.23.) The first statute, which is part of the Clayton Act, limits district court's jurisdiction to issue injunctive relief in situations involving labor strikes. *See Eastern Coal Corp. v. Disabled Miners*

---

[1] Notably, Plaintiff also does not allege that she exhausted her ADA claim with the Equal Employment Opportunity Commission before filing this action.

*Ass'n of Southern W. Va.*, 449 F.2d 616, 619–20 (6th Cir. 1971). The second statute is the remedial provision of Title VII, which authorizes a court, after finding that an employer has "intentionally engaged . . . in an unlawful employment practice," to order affirmative injunctive relief. 42 U.S.C. § 2000e-5(g); *see also Shore v. Fed. Exp. Corp.*, 777 F.2d 1155, 1158 (6th Cir. 1985); *EEOC v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 953 (E.D. Tenn. 2017), *aff'd* 899 F.3d 428 (6th Cir. 2018) (noting that the ADA incorporates the remedies available under Title VII). As set forth above, however, Plaintiff fails to allege a factual basis to support a claim under the ADA.

### B.  State Law Claims

Plaintiff also invokes the Court's diversity jurisdiction. (ECF No. 1 at PageID.2.) Plaintiff does not allege that the amount in controversy exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). However, given that she alleges future pain and suffering from the injuries she alleges, the Court may fairly infer that the amount in controversy exceeds the jurisdictional amount.

Reading Plaintiff's complaint liberally, as I am bound to do, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), I discern the following state-law claims: (1) negligence/gross negligence; (2) wrongful termination; and (3) retaliatory discharge for filing a workers' compensation claim. (ECF No. 1 at PageID.1–3.) Although Plaintiff's complaint might present a choice of law issue on her state-law claims, I analyze them under Indiana law because Defendant employed Plaintiff in Indiana, the alleged injury incurred in Indiana, Defendant is an Indiana corporation, and Plaintiff filed a worker's compensation claim in Indiana.[2]

---

[2] It is not clear that this Court has personal jurisdiction over Defendant or that venue is proper in this District. However, because both issues are waivable, *see State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc.*, 494 F. App'x 550, 554 (6th Cir. 2012), I have not considered them here.

First, Plaintiff's negligence/gross negligence claim based on injuries she suffered as a result of the August 2020 workplace accident are barred by the exclusive remedy provision of the Indiana Workers' Compensation Act. Under that statute, "[t]he rights and remedies granted to an employee . . . on account of personal injury . . . by accident shall exclude all other rights and remedies of such employee . . . on account of such injury . . . except for [remedies for compensating victims of violent crimes]." Ind. Code. § 22–3–2–6. As the Seventh Circuit observed in *Kottis v. U.S. Steel Corp.*, 543 F.2d 22 (7th Cir. 1976), "[t]he Indiana courts have repeatedly held that the remedy provided by the Act is exclusive." *Id.* at 24 (quoting *Hickman v. Western Heating & Air Conditioning Co.,* 207 F. Supp. 832, 833 (N.D. Ind. 1962)).

Next, Plaintiff's claim that she was wrongfully terminated because she was injured and seeking emergency medical treatment also fails to state a claim. (ECF No. 1 at PageID.3.) Unless there is a contract for a specific term of employment, employment in Indiana is at will and terminable by either party with or without cause. *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). Plaintiff does not allege the existence of an employment contract that would support a wrongful discharge claim. Therefore, her employment was at will and this claim fails.

Finally, although Indiana law provides that an at-will employee may be discharged without cause, Indiana courts have recognized a cause of action when the employee is discharged solely for exercising a statutorily-conferred right, such as the right to pursue a workers' compensation claim. *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425, 428 (1973). To establish a claim for retaliatory discharge, the employee must establish a causal connection between her termination and her filing of a workers' compensation claim. *Hudson v. Wal-Mart Stores, Inc.*, 412 F.3d 781, 785 (7th Cir. 2005). Here, Plaintiff's retaliatory discharge claim falters on her own allegations. That is, Plaintiff alleges that that she was terminated on August 18, 2020, for violating Defendant's

three-day no-call-no-show policy. (ECF No. 1 at PageID.7.) However, Plaintiff alleges that she did not contact the Indiana Workers' Compensation Board until August 19, 2020—the day after she was terminated. (*Id.*). Moreover, while Plaintiff alleges that she inquired of Defendant's representatives where she should go for emergency services, she alleges no fact suggesting that she indicated to her supervisors or Defendants' other representatives prior to filing her claim that she actually intended to pursue a worker's compensation claim. *See Hudson*, 412 F.3d at 785. To the extent Plaintiff relies on her February 2021 discharge to support a retaliatory termination claim, her own allegations show that she was discharged because a physician had restricted her to a sit-down job, and Defendant had no sit-down jobs available. Accordingly, Plaintiff fails to allege sufficient facts to support a *Frampton* retaliatory discharge claim.

Therefore, the state-law claims that can be discerned from Plaintiff's allegations fail to state a claim.

### III.  Conclusion

For the foregoing reasons, I recommend that Plaintiff's complaint be **dismissed**. The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

OBJECTIONS to this Report and Recommendation (including any argument that leave to amend should be granted) must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  April 11, 2022                                          /s/ Sally J. Berens
                                                                                        SALLY J. BERENS
                                                                                        U.S. Magistrate Judge